IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BMW OF NORTH AMERICA, LLC, a Delaware Limited Liability Company; and BAYERISCHE MOTOREN WERKE AG, a German Corporation,<br><br>      Plaintiffs,<br><br>   v.<br><br>ABDUL ZAHRA, an Individual; HAKEEM ZAHRA, an Individual; HAZEM ZAHRA, an Individual; REEM ZAHRA, an Individual; HEBA JAMALEDDIN, an Individual; and DOES 1-10, inclusive,<br><br>      Defendants. | No. C 15-2924 CRB<br><br>**ORDER GRANTING MOTION FOR DEFAULT JUDGMENT** |

Plaintiffs BMW of North America, LLC, and Bayerische Motoren Werke AG have filed a motion for default judgment against Defendants Abdul Zahra, Hakeem Zahra, Hazem Zahra, Heba Jamaleddin, and Reem Zahra, individuals allegedly engaged in selling counterfeit "BMW" and "M" brand merchandise on eBay. See Motion for Default Judgment (dkt. 25). Defendants were served, see Proofs of Service (dkts. 13-17), and after Defendants failed to respond, the Clerk of Court entered a notice of default against them. See Clerk's Notice of Default (dkt. 19). The Court has reviewed Plaintiff's motion and has given Defendants an opportunity to respond in writing and to appear at a hearing on January 15, 2016. See Minute Entry (dkt. 25). Defendants have not responded or appeared. For the reasons outlined below, the Court GRANTS IN PART Plaintiffs' default judgment motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendants allegedly operate web stores on www.ebay.com ("eBay") under the known seller IDs "bmw_only.48," "motor_sport_parts," "frontdiss," "3sfora2012," and "bavarianparts94." According to Plaintiffs, Defendants use BMW® and M®-related trademarks to advertise and distribute counterfeit automotive products to consumers bearing counterfeit BMW and M marks. Defendants have allegedly sold over 10,763 units of counterfeit BMW and M marked items and realized around $194,164.67 in gross revenue. Moreover, despite Plaintiffs' numerous cease and desist notices, Defendants allegedly continue to sell counterfeit BMW and M marked items.

### A. Plaintiff's Trademarks

Plaintiffs' allege that their motor vehicles and related products have earned a reputation for innovation, quality and performance, and that they have spent substantial time, money and effort on developing consumer recognition and awareness of their BMW and M marks and products. Compl. ¶ 13. Plaintiffs have developed significant goodwill in their entire product line through the use of their marks. Id. ¶ 14. Plaintiffs own numerous registered trademarks for their BMW and M branded products, and the allege the infringement of eight of those marks here. Id. ¶ 16.

### B. Defendants' Use of Plaintiff's Trademarks

According to Plaintiffs, Defendants regularly use counterfeit BMW and M trademarks to advertise, market, sell, and distribute counterfeit automotive products to consumers. See Pham Decl. ¶ 2, Exs. A-E. Plaintiffs purchased a number of products from Defendants during an investigation into the sale of counterfeit BMW products.[1] The BMW branded

---

[1] In October 2013, during an investigation into the sale of counterfeit BMW products, Plaintiffs purchased a "68mm BMW Hub Caps Emblem" (Item # 261293624756) through Defendants' eBay seller ID "bmw_only.48" for a cost of $20.00 and a "BMW steering wheel emblem" (Item # 251298056327) through Defendants' eBay seller ID "frontdiss" for a cost of $14.99. See Pham Decl. ¶ 3 Ex. F-G; Compl. ¶ 23. In December 2013, Plaintiffs also purchased a "BMW Steering Wheel Emblem" (Item # 261360938897) through Defendants' eBay seller ID "motor_sport_parts" for a cost of $13.00. See Pham Decl., ¶ 4, Ex. H; Compl. ¶ 24. In April 2014, Plaintiffs purchased a "Black BMW airbag horn emblem" (Item # 151268488353) through Defendants' eBay seller ID "3sfora2012" for a cost of $13.99. See Pham Decl. ¶ 5, Ex. I; Compl. ¶ 25. Additionally, in July 2014, Plaintiffs purchased a "BMW steering wheel emblem"

products purchased from Defendants through eBay seller IDs "bmw_only.48," "motor_sport_parts," "frontdiss," "3sfora2012," and "bavarianparts94" were received and inspected by Plaintiffs to determine authenticity. See Pham Decl. ¶ 8; Compl. ¶ 28. Plaintiffs' inspection of the purchased items allegedly confirmed that the items Defendants sold and distributed were counterfeit BMW branded products that infringed on Plaintiffs' federally registered BMW trademarks. Id.

### C. Plaintiffs Send Cease and Desist Notices and Serve Complaint

On June 16, 25, and July 7, 2014, Plaintiffs' counsel sent cease and desist notices to Defendants' email address "hakeemzahra@yahoo.com" and via certified mail to Defendants' address of 8750 Mesa Brook Way, Elk Grove, California 95624. See Pham Decl. ¶ 9, Exs. L–N. The email and mailing addresses are connected to Defendants' eBay seller IDs "motor_sports_parts" and "bmw_only.48." Id. Defendants received Plaintiffs' certified mail on July 21, 2014, as evidenced by a signed return receipt. Id. In July 2014, Plaintiffs' counsel sent cease and desist notices to Defendants' email address "mauisales14@gmail.com" and via mail to Defendants' address of P.O. Box 2320, Watsonville, California 95077. See Pham Decl. ¶ 10. The email and mailing addresses are connected to Defendants' eBay seller ID "3sfora2012." Id. Plaintiffs did not receive a response from Defendants to these notices. See Pham Decl. Exs. O–Q. Plaintiffs filed their Complaint against Defendants on June 23, 2015. See Complaint (dkt. 1). Defendants were served with copies of the Summons and Complaint. See Executed Summonses (dkts. 13–17). The Clerk of Court entered default against Defendants on August 20, 2015. See Entry of Default (dkt. 19).

### D. Plaintiffs Obtain Limited Discovery Regarding Defendants' Sales

Pursuant to Fed. R. Civ. P. 45 and this Court's Order allowing limited and expedited discovery, see Order (dkt. 22), Plaintiffs served subpoenas on eBay and PayPal seeking the

---

(Item # 151347749274) through Defendants' eBay seller ID "3sfora2012" for a cost of $12.99. Pham Decl. ¶ 6, Ex. J; Compl. ¶ 26. Finally, in October 2014, Plaintiffs purchased a "BMW front hood badge" (Item # 151423690996) through Defendants' eBay seller ID "bavarianparts94" for a cost of $9.95. See Pham Decl. ¶ 7, Ex. K; Compl. ¶ 27.

3

production of account registrations, listing histories, and sales records for the users operating on eBay under seller IDs "bmw_only.48," "motor_sport_parts," "frontdiss," "3sfora2012," and "bavarianparts94." See Pham Decl. ¶ 12. In October 2015, PayPal produced documents responsive to Plaintiffs' Rule 45 subpoena. See Pham Decl. ¶ 13. In total, Defendants have allegedly sold around 10,763 units of infringing counterfeit BMW and M marked items and realized around $194,164.66 in gross revenue from that allegedly illegal activity. Id.

Specifically, Defendant Abdul's PayPal records show no less than 2,517 sales of BMW branded automotive products (email/PayPal ID "mauisales14@gmail.com"), including decals, roundels, emblems, key chains, and grilles, resulting in total sales revenues of no less than $34,782.71 ($31,809.70 after deducting fees). See Pham Decl. ¶ 13.i., Exs. R–S.

Defendant Hakeem's PayPal records show no less than 721 sales of BMW branded automotive products (email/PayPal ID "hakeemzahra@yahoo.com"), including license plate frames, wheel caps, stickers, decals, roundels, emblems, key chains, key fobs, and grilles, resulting in total sales revenues of no less than $14,986.97 ($13,621.79 after deducting fees). See Pham Decl. ¶ 13.ii, Exs. T–U.

Defendant Hazem's PayPal records show the sale of no less than 1,003 BMW-branded automotive products through email/PayPal ID "mac.zahra@yahoo.com," including roundels, emblems, key chains, and grilles, resulting in total sales revenues of no less than $16,191.00 ($14,829.77 after deducting fees). See Pham Decl. ¶ 13.iii, Exs. V–W.

Defendant Heba's PayPal records show no less than 6,522 sales of BMW-branded automotive products through email/PayPal ID "gamediss2@gmail.com," including roundels, emblems, key chains, and wheel caps, resulting in total sales revenues of no less than $128,203.99 ($122,361.31 after deducting fees). See Pham Decl. ¶ 13.iv, Exs. X–Y.

Furthermore, in November 2015, eBay produced Account Registration Information for seller IDs "bmw_only.48," "motor_sport_parts," "frontdiss," "3sfora2012," and "bavarianparts94." See Pham Decl. ¶ 14. According to eBay, the seller ID "3sfora2012" with email address "mauisales14@gmail.com" is registered to Defendant Reem. Pham Decl. ¶ 14.i., Ex. Z. Based upon that email address, Plaintiffs allege that Defendants Reem and

Abdul share seller ID "3sfora2012" and email/PayPal ID "mauisales14@gmail.com." See Pham Decl. ¶ 14.i., Ex. Z. The seller IDs "motor_sport_parts"2 and "bmw_only.48" with email address "hakeemzahra@yahoo.com" are registered to Defendant Hakeem based upon the User ID History and Contact Info History page of the eBay documents. See Pham Decl. ¶ 14.ii, Ex. AA. Seller ID "bavarianparts94" with email address "mac.zahra@yahoo.com" is registered to Defendant Hazem. See Pham Decl. ¶ 14.iii, Ex. BB. Finally, the seller ID "frontdiss" with email address "gamdiss2@gmail.com" is registered to Defendant Heba according the Account Registration Information page. See Pham Decl. ¶ 14.iv, Ex. CC.

### E. Plaintiffs' Motion for Entry of Default Judgment

Plaintiffs recently filed the motion for default judgment now before the Court. See Motion for Default Judgment (dkt. 25). Defendants were served, see Proofs of Service (dkts. 13-17), and after Defendants failed to respond, the Clerk of Court entered a notice of default against them. See Clerk's Notice of Default (dkt. 19). The Court has reviewed Plaintiff's motion and has given Defendants an opportunity to respond in writing and to appear at a hearing on January 15, 2016. See Minute Entry (dkt. 25). Defendants have not responded or appeared. For the following reasons, the Court GRANTS the motion for default judgment.

## II. LEGAL STANDARD

The Court may enter a default judgment upon motion by the Plaintiff after entry of default by the Clerk. See Fed. R. Civ. P. 55(b). Whether to grant a motion for the entry of a default judgment is within the discretion of the trial court. See Lau Ah Yew v. Dulles, 236 F.2d 415, 416 (9th Cir. 1956). Upon an entry of default by the Clerk, the factual allegations of the plaintiff's complaint will be taken as true, except those relating to the amount of damages. See Derek Andrew, Inc. v. Poof Apparel Corp., 528 F.3d 696, 702 (9th Cir. 2008).

In determining whether to enter a default judgment, a court has "an affirmative duty to look into its jurisdiction over both the subject matter and the parties." In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999). This Court has subject matter jurisdiction given that Plaintiffs bring claims against Defendants under 15 U.S.C. § 1121, 28 U.S.C. §§ 1331 and 1338(a) for violations of the Lanham Act. See Complaint. The Court has supplemental jurisdiction over

1 Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).  See id.  Furthermore, the Court
2 has personal jurisdiction over Defendants because Defendants reside and conduct business
3 within this jurisdiction and committed the alleged trademark infringement and unfair
4 competition in this district.  Id. ¶ 8.  The Court thus concludes that it has "jurisdiction over
5 both the subject matter and the parties."  See Tuli, 172 F.3d at 712 ; see also Schwarzenegger
6 v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004).

## III. DISCUSSION

### A. Default Judgment Under Eitel

This Court examines the following factors in determining whether to enter a default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the likelihood of obtaining a decision on the merits.  See Eitel v. McCool, 782 F.2d 1470, 1471–72 (9th Cir. 1986).  Here, these factors weigh in favor of granting Plaintiffs' motion for default judgment.

Under the first factor, absent a default judgment, Plaintiffs will not be compensated for losses suffered from trademark infringement and will not be able to protect their marks. See, e.g., Wilamette Green Innovation Ctr., LLC v. Quartis Capital Partners, No. 14-cv-00848, 2014 WL 5281039, at *6 (N.D. Cal. 2014) (citations omitted) ("Denying a plaintiff a means of recourse is by itself sufficient to meet the burden posed by this factor.").

The second and third Eitel factors—concerning the merits of Plaintiffs' substantive claims and the sufficiency of their Complaint—also weigh in favor of granting default judgment here.  See Compl. at 10–11; Eitel, 782 F.2d at 1471–72.  Plaintiffs have alleged five causes of action in their Complaint: (1) Federal Trademark Infringement, see 15 U.S.C. § 1114; Lanham Act § 32(a); (2) False Designation of Origin/Unfair Competition, see 15 U.S.C. § 1125(a); (3) Trademark Dilution, see 15 U.S.C. § 1125(c); (4) Unfair Business Practices, see California Business & Professions Code § 17200, and (5) California Common Law Unfair Competition.  See generally Compl.  The Court concludes that (a) Plaintiffs have

adequately pleaded a trademark infringement claim,[2] and (b) analysis of the remaining claims is unnecessary because the remedies sought here are available based on the trademark claim alone, see Rolex Watch, U.S.A., Inc. v. Michel Co., 179 F.3d 704, 708 n.6 (9th Cir. 1999); U–Haul Int'l, Inc. v. Jartran, Inc., 793 F.2d 1034, 1041–42 (9th Cir. 1986).

Turning to the fourth Eitel factor, if the sum of money at stake in the litigation is substantial or unreasonable, default judgment is discouraged. See Eitel, 782 F.2d at 1472 (three-million dollar judgment weighed against default judgment). Here, although Plaintiffs request two million dollars in statutory damages, the Court has a wide range of discretion to award a more reasonable sum of money. The Court thus concludes that the fourth Eitel factor does not weigh against a grant of default judgment here. See id.

Turning to the remaining factors, there is no possibility of dispute over material facts here because, upon an entry of default by the Clerk, the factual allegations of the plaintiff's complaint related to liability are taken as true. See Derek Andrew, Inc. v. Poof Apparel Corp., 528 F.3d 696, 702 (9th Cir. 2008). Furthermore, there is no evidence of excusable neglect by Defendants, given that they were properly served and received numerous cease and desist letters. See Pham Decl. ¶ 9, Exs. L–N; Executed Summons (dkts. 13–17). Finally, although default judgments are generally disfavored compared to decisions on the merits, see Pena v. Seguros La Comercial, S.A., 770 F.2d 811, 814 (9th Cir. 1985), Defendants' failure to appear has made a decision on the merits impossible. See Eitel, 782 F.2d at 1471–72. The Court thus concludes that the Eitel factors weigh in favor of default judgment, and GRANTS IN PART Plaintiffs' Motion for Entry of Default Judgment. See Motion (dkt. 25).

---

[2] To prevail on a trademark infringement claim under Section 32 of the Lanham Act, a plaintiff must show: (1) "that it owns a valid mark, and thus a protectable interest," and (2) "that the alleged infringer's use of the mark is likely to cause confusion." KP Permanent Make-Up, Inc. v. Lasting Impression, Inc., 408 F.3d 596, 602 (9th Cir. 2005) (quoting 15 U.S.C. § 1114(1)(a)). Plaintiffs have adequately alleged that they own valid trademarks covering the items at issue here. See Compl. ¶ 16. The Court concludes that the Plaintiffs have also properly alleged likelihood of confusion under the test established in AMF Inc. v. Sleekcraft Boats. See 599 F.2d 341, 348–49 (9th Cir. 1979); Pham Decl., ¶¶ 2–7, Exs. A-K; Compl. ¶¶ 19–28. The items at issue here are allegedly counterfeits that are closely similar to the marks Plaintiffs are attempting to protect. See Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc., 658 F.3d. 936, 945 (9th Cir. 2011) ("[T]here is a likelihood of confusion . . . when the offending mark is a counterfeit mark, or a mark virtually identical to the previously registered mark coupled with the intent to pass off or borrow from established good will.").

**B.     Damages and Injunctive Relief**

Plaintiffs seek damages and injunctive relief here. See Motion for Default Judgment (dkt. 25) at 20–23. Plaintiffs request that the Court enjoin Defendants from making unauthorized use of Plaintiffs' trademarks, see id. at 23, and they also seek statutory damages in the amount of $2,000,000.00 pursuant to 15 U.S.C. § 1117(c). The Court concludes that both damages and injunctive relief are warranted here as set forth below.

**1.     Injunctive Relief**

The Lanham Act gives the Court "[p]ower to grant injunctions according to the rules of equity and upon such terms as the court may deem reasonable, to prevent the violation" of a mark holder's rights. See 15 U.S.C. § 1116(a). "Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1180 (9th Cir. 1988). The Court concludes that injunctive relief is appropriate here to prevent Defendants from making unauthorized use of Plaintiffs' marks.

**2.     Damages**

After entry of default, well-pleaded factual allegations in the complaint are taken as true, except as to the amount of damages. Fair Hous. of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002). Plaintiffs may recover statutory damages of "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." See 15 U.S.C. § 1117(c)(1). Pursuant to § 1117(c)(2), however, if the court determines that the infringement was willful, a defendant may recover a maximum of $2,000,000 per mark infringed. See § 1117(c)(2). To recover damages after securing a default judgment, a plaintiff must prove the relief it seeks through testimony or written affidavit. Bd. of Trs. of the Boilermaker Vacation Trust v. Skelly, Inc., 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005).

Plaintiffs have adequately pleaded that Defendants' infringement here was willful. See, e.g., Compl. ¶ 40; 15 U.S.C. § 1117(c)(2). The Court declines, however, to award the requested $2,000,000 in statutory damages in granting default judgment. The Court has

1 discretion to determine statutory damages, subject only to the statutory minimum and
2 maximum. See, e.g., Coach Services, Inc. v. YNM, Inc., 2011 WL 1752091, *5 (C.D. Cal.
3 May 6, 2011); see also Harris v. Emus Records Corp., 734 F.2d 1329, 1335 (9th Cir.1984)
4 (interpreting 17 U.S.C. § 504(c), a similarly-worded copyright infringement provision, and
5 concluding that district courts have "wide discretion in determining the amount of statutory
6 damages to be awarded, constrained only by the specified maxima and minima"). The Court
7 concludes that the $2,000,000 requested by Plaintiffs would represent "a windfall." See Yelp
8 Inc. v. Catron, 70 F. Supp. 3d 1082, 1101 (N.D. Cal. 2014).[3]

9 The Court should, however, award damages in trademark infringement cases that are
10 sufficient to deter future infringement. See Playboy Enters., Inc., v. Baccarat Clothing Co.,
11 692 F.2d 1272, 1274–75 (9th Cir. 1982). Balancing this deterrence interest with the
12 procedural posture of this case—and with discovery indicating that Defendants received
13 close to $190,000 in gross revenue from the sale of the allegedly counterfeit items—the
14 Court concludes than an award of $10,000 (ten times the minimum statutory damages award)
15 for each of the eight registered trademarks identified by the Plaintiffs in their Complaint is
16 appropriate, for a total damages award of $80,000. See 15 U.S.C. § 1117(c)(1); see, e.g.,
17 Adobe Sys., Inc. v. Tilley, No. C 09-1085 PJH, 2010 WL 309249, at *6 (N.D. Cal. Jan. 19,
18 2010) (awarding $10,000 per infringed trademark); Adobe Sys. Inc. v. Brooks, No.
19 5:08-CV-04044 RMW, 2009 WL 593343, at *4 (N.D. Cal. Mar. 5, 2009) (same).

### 3. Attorneys' Fees and Costs

21 Plaintiffs also seek attorneys' fees, even though they have "eschew[ed] actual
22 damages under § 1117(a) and elect to seek statutory damages under § 1117(c)." See K & N
23 Eng'g, Inc. v. Bulat, 510 F.3d 1079, 1082 (9th Cir. 2007). "Section 1117(c)," however,
24 "makes no provision for attorney's fees; nor does § 1117(b) authorize such fees for a plaintiff
25 seeking statutory damages under § 1117(c)." Id. On the contrary, "Section 1117(b)'s
26 attorney's fees provision applies only in cases with actual damages under § 1117(a)," not

---

28 [3] Plaintiffs have indicated that Yelp supports their request for $2,000,000 in statutory damages, but the actual damages award in that case was $45,000. See Motion at 21; Yelp, 70 F. Supp. 3d at 1099. The Court nevertheless agrees with Plaintiffs that the reasoning in Yelp is persuasive. See id.

9

under the theory Plaintiffs have advanced here. Id. "Similarly, Plaintiff's request for costs should be denied, because the recovery is premised on § 1117(a)." See Yelp Inc. v. Catron, 70 F. Supp. 3d 1082, 1104 (N.D. Cal. 2014). The Court thus DENIES Plaintiffs' request for attorneys' fees and costs.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART Plaintiffs' Motion for Default Judgment. The Court ORDERS that judgment shall be entered in favor of Plaintiffs in the amount of $80,000 in total damages against Defendants Abdul Zahra, Hakeem Zahra, Hazem Zahra, Heba Jamaleddin, and Reem Zahra.

The Court further ORDERS that Defendants and all of their agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under Defendants' authority, or in concert or participation with Defendants are:

(1) enjoined and permanently restrained from manufacturing, advertising, distributing, offering for sale, selling, whether directly or indirectly, counterfeit BMW and M branded products, merchandise, including any merchandise of any kind bearing Plaintiffs' marks or names that are confusingly similar to the trademarks, trade names, designs or logos of Plaintiffs;

(2) enjoined and permanently restrained from using Plaintiffs' marks or any copy, reproduction, or colorable imitation, or confusingly similar simulation of Plaintiffs' marks on or in connection with the promotion, advertising, distribution, manufacture or sale of Defendants' goods;

(3) ordered to cancel, withdraw and recall all their promotions, advertisements and merchandise bearing Plaintiffs' marks or any confusingly similar simulation to Plaintiffs' marks, which have been published, placed or shipped by Defendants or under their authority, to any person, entity, or customer, including, without limitation, any publisher, agency, wholesaler, distributor, retailer, consignor or marketer, and also deliver to each publisher or customer a copy of this Court's order as it relates to said injunctive relief against Defendants.

**IT IS SO ORDERED.**

Dated: January 15, 2016

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE